UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | | |
|---|---|---|
| TOMMY CLOUD | : | CIVIL ACTION NO. 2:11-cv-2090 |
| VERSUS | : | JUDGE MINALDI |
| WARDEN, LOUISIANA STATE PENITENTIARY | : | MAGISTRATE JUDGE KAY |

## REPORT AND RECOMMENDATION

Before the court is the application for the writ of habeas corpus filed by petitioner Tommy Cloud (hereafter, "petitioner").  Doc. 1; *see also* doc. 3.  Petitioner is a prisoner in the custody of the Louisiana Department of Public Safety and Corrections.  The matter has been referred to the undersigned for review, report, and recommendation in accordance with 28 U.S.C. § 636 and the standing orders of the court.

For the following reasons, IT IS RECOMMENDED that the application be DENIED and DISMISSED WITH PREJUDICE.

### I. PROCEDURAL HISTORY

**A. Conviction & Direct Appeal**

On March 25, 2003, the 33rd Judicial District Court in and for Allen Parish, Louisiana issued a bill of indictment against petitioner for the following offenses: (1) sexual battery; (2) oral sexual battery; (3) molestation of a juvenile; and (4) indecent behavior with a juvenile.  In accordance with a plea agreement, petitioner pled guilty to sexual battery and oral sexual battery, and the prosecution agreed to dismiss the remaining charges as well as a pair of unrelated burglary charges.  R. at 95–98.  Petitioner was sentenced to two consecutive terms of nine years,

each to run concurrently with a sentence he was already serving in Evangeline Parish.  R. at 124; *see also* doc. 1, att. 2, p. 8.

Petitioner then appealed this sentence to the Louisiana Third Circuit Court of Appeal.  He argued that his guilty plea was invalid in that one of the conditions of the plea bargain was impossible to fulfill because petitioner had already pled guilty to the burglary charges that were to be dismissed.  *State v. Cloud*, 893 So. 2d 220, 221 (La. App. 3 Cir. 2005).  The appellate court agreed, and vacated petitioner's conviction and sentence.  *Id.* at 222.  The court then remanded the case for further proceedings.  *Id.*

On remand, the State reinstated all four of petitioner's original charges.  On January 25, 2006, after a jury trial, petitioner was found guilty on all counts.  R. at 421–22.  Petitioner was thereafter adjudicated to be a habitual offender, and sentenced to a term of life imprisonment on all four charges, each sentence to run concurrently.  R. at  504–07, 858.

Petitioner appealed his convictions and sentences, claiming violations of double jeopardy and excessiveness of sentence.  *State v. Cloud*, 946 So. 2d 265 (La. App. 3 Cir. 2006).  The appellate court agreed that the conviction for indecent behavior amounted to a double jeopardy violation, and therefore reversed petitioner's conviction and sentence on that charge.  *Id.* at 269–72.  The court also found error in the imposition of four life sentences following the habitual offender adjudication.  *Id.* at 274–75.  Accordingly, petitioner's sentences were vacated and the case was remanded with instructions to impose only one life sentence.  *Id.*

After petitioner was so sentenced, he filed an application for a writ of certiorari in the Louisiana Supreme Court.  On September 21, 2007, his writ application was denied.  *State v. Cloud*, 964 So.2d 331 (La. 2007).  Petitioner did not seek further direct review with the United States Supreme Court.  Doc. 3, p.3 at ¶ 9(h).

**B. Post-Conviction Relief**

On June 17, 2008, petitioner filed an application for post-conviction relief in the 33rd Judicial District Court, raising six claims.  Doc. 8, p. 37 *et seq.*  On July 22, 2008, the trial court summarily denied claims one, two, three, five, and six.  Doc. 8, att. 2, pp. 60–62.  On July 21, 2009, the court convened an evidentiary hearing on claim four, petitioner's ineffective assistance of counsel claim.  In an opinion and judgment signed the same date, that claim was also dismissed.  Doc. 1. att. 3, pp. 3–6.

On September 11, 2009, petitioner filed a writ application in the Louisiana Third Circuit Court of Appeals.  Doc. 8, pp. 7–36.  The Third Circuit denied the application on March 10, 2010.  Doc. 1, att. 3, p. 1.  On April 19, 2010, petitioner sought writs in the Louisiana Supreme Court.  R. at 1094.  On April 25, 2011, the application was denied.  *State ex rel. Cloud v. State*, 62 So. 3d 72 (La. 2011).

## II. FACTUAL BACKGROUND

This case began with an incident occurring on or about September 6, 2002 in Allen Parish, Louisiana.  R. at 4.  The facts, as found by the trial court, are as follows: Petitioner brought his girlfriend D'Lisa Miller and her 12-year-old daughter (hereafter, "the victim") to his residence, a trailer situated on the property of petitioner's mother in Oberlin, Louisiana.  R. at 908.  After they arrived, petitioner brought the victim to watch a video while Ms. Miller was asleep in another room.  R. at 909.  Petitioner then forced the victim onto a bed, kissed her, rubbed her genitals with his fingers, and licked her genitals with his tongue.  *Id.*  The victim later reported that she saw an active video camera in the room, [R. at 952–53], but it was never proven whether the incident was, in fact, recorded.

The victim eventually told her mother and grandmother about the incident, and the incident came to the attention of Allen Parish law enforcement.  R. at 37, 959; *see also* doc. 13, p. 11.  On September 24, 2002, the Allen Parish Sheriff's Department obtained a search warrant for petitioner's trailer.  R. at 49–50.  The search was conducted on the same day.  *Id.* at 52. As part of the search, officers took photographs of the trailer's interior and exterior.  *Id.* at 66–71.

Allen Parish prosecutors then brought the case to a grand jury.  On March 25, 2003, the grand jury indicted petitioner for: (1) sexual battery; (2) oral sexual battery; (3) molestation of a juvenile; and (4) indecent behavior with a juvenile.  R. at 4.  Petitioner was arrested on March 28, 2003.  R. at 964.

After the procedural delays described *supra*, a jury trial took place in January 2006. Numerous witnesses testified, including the victim.  Doc. 57; R. at 522–664.  On January 25, 2006, the jury found petitioner guilty on all counts. R. at 421–22.  He was thereafter adjudicated to be a habitual offender[1] and sentenced to life in prison.  R. at 700–703.

In the *habeas* application now before the court, petitioner raises seven[2] claims for relief. He first claims that he was denied due process when the state court summarily denied all but one of his claims for postconviction relief.  Doc. 1, att. 2, pp. 10–24.  He then puts forward the same six claims for relief that he made in his state-court application, namely:

---

[1] Petitioner has five felony offenses. R. at 701.  However, petitioner's fifth conviction occurred in Evangeline Parish *after* he was indicted in the instant case.  R. at 733.  Therefore, the Evangeline Parish conviction was not counted as a prior conviction for purposes of the habitual offender adjudication.  R. at 698.  The Evangeline Parish conviction involved a guilty plea to multiple counts of sexual battery, indecent behavior with a juvenile, and molestation of a juvenile.  R. at 733.  One of the victims in the Evangeline Parish matter was the same girl involved in the instant case.  R. at 534–40

[2] There is some confusion as to the number and substance of petitioner's claims. Petitioner first "consolidates" claims one through four to argue against the state district court's summary denial of those claims on procedural grounds.  Doc. 1, att. 2, p. 10.  In actuality, the district court summarily denied claims one, two, three, five, and six on the merits, while also noting *alternatively* that claims one, two, three, and five were procedurally barred.  The court then set a contradictory hearing on claim four.  R. at 999–1001.  Petitioner further complicates matters by transposing the numbers of his state-court claims in the instant application and making overlapping substantive arguments regarding ineffective assistance of counsel.  For the sake of clarity, we will address petitioner's procedural arguments regarding summary dismissal separately from the substantive claims and address the ineffective assistance of counsel as one claim for relief.

1) Both the search of petitioner's camper and petitioner's arrest were in violation of the Fourth, Fifth, and Sixth Amendments;

2) The State withheld exculpatory evidence;

3) The State denied petitioner compulsory process for obtaining witnesses at trial;

4) Petitioner was not provided effective assistance of counsel at the district court or appellate level;

5) The State knowingly made use of false witness testimony at trial; and

6) The district attorney improperly vouched for a witness's credibility during his closing argument.

### III. LEGAL STANDARD ON HABEAS REVIEW

Federal courts of the United States have jurisdiction to entertain applications for writs of habeas corpus on behalf of a person in State custody only if that person "is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).

Because the state district court adjudicated petitioner's claims on the merits, this court reviews those decisions under the deferential standard of 28 U.S.C. § 2254(d).  *Corwin v. Johnson*, 150 F.3d 467, 471 (5th Cir. 1998).  That standard provides that where the state court has reached the merits of a constitutional claim, a writ of habeas corpus shall not be granted with respect to that claim unless the adjudication of the claim resulted in a decision that was either: (1) contrary to clearly established federal law or involved an unreasonable application of that law; or (2) based on an unreasonable determination of the facts in light of the evidence before the state court.  28 U.S.C. § 2254(d).

Under the first standard, a petitioner must demonstrate that the "fair import" of the state court decision shows that the court failed to apply the controlling federal standard.  *Early v. Packer*, 537 U.S. 3, 9 (2002) (per curiam).  The decision must be "so lacking in justification that

there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." *Harrington v. Richter*, 131 S. Ct. 770, 784 (2011).

Under the second standard, it is insufficient that a petitioner show that the state court erred in its factual determination; he must demonstrate that the factual determination was objectively unreasonable, which is a "substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007). "[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 130 S.Ct. 841, 849 (2010). Rather, the petitioner must show that "a reasonable factfinder must conclude" that the determination of facts by the state court was unreasonable. *Rice v. Collins*, 546 U.S. 333, 341 (2006).

## IV. LAW & ANALYSIS

### A. Grouped Claims – Procedural Default

Petitioner groups four of his claims[3] to argue that the state court's summary dismissal of those claims was improper. In his memorandum in support of the instant application, petitioner states that the state court "committed substantive manifest error [by] summarily denying" several of petitioner's claims on post-conviction relief, "denying petitioner procedural due process . . . ." Doc. 1, att. 2, p. 10. He contends that the state district court dismissed these claims for relief pursuant to an erroneous application of Louisiana Code of Criminal Procedure article 930.4. Petitioner then proceeds to address the substance of each claim individually. *See* doc. 1, att. 2, pp. 12–19.

When petitioner filed an application for post-conviction relief in the state district court, the State responded that the claims for relief were not cognizable on post-conviction review

---

[3] Petitioner purports to group claims one through four but he actually contests the summary dismissal of claims one, two, three, and five.

pursuant to two provisions of Louisiana Code of Criminal Procedure article 930.4.  R. at 997–98.
Subsection B provides that "[i]f the application alleges a claim of which the petitioner had
knowledge and inexcusably failed to raise in the proceedings leading to conviction, the court
may deny relief."  La. C.Cr.P. art. 930.4(B).  Further, subsection C provides that "[i]f the
application alleges a claim which the petitioner raised in the trial court and inexcusably failed to
pursue on appeal, the court may deny relief."  La. C.Cr.P. art. 930.4(C).

In its opinion and judgment, the state district court rejected five of petitioner's six claims
claim on the merits.  The court also alternatively noted that claims one, two, three, and five were
procedurally barred because they were not raised at trial or direct appeal.  R. at 999–1001.

Petitioner's desire to group the arguments seems to be borne out of concern that the
procedural bar imposed by the state district court would prevent this court from resolving his
claims for relief on the merits.  He argues that the state district court failed to "order [him] to
state reasons for his failure" to assert his claims at trial or on direct appeal as required by the
statute.  La. C.Cr.P. art. 930.4(F); *see also* doc. 1, att. 2, pp. 12–13.  He also discusses the
applicable standard for overcoming a procedural default—that is, he attempts to show both cause
and prejudice for the default, and he also argues that the failure to consider his claims would
result in a fundamental miscarriage of justice.  Doc. 1, att. 2, pp. 12–16.  Petitioner argues that
these claims for relief were not asserted at trial or on direct appeal because his counsel was
ineffective.  *Id.*

Despite petitioner's attempt to overcome his procedural default, the court does not need
to make that determination.  Procedural default is an affirmative defense, and defense is waived
in the federal proceeding if it is not timely and properly raised by the government therein.  *Trest
v. Cain*, 522 U.S. 87, 89–90. (1997); *Gray v. Netherland,* 518 U.S. 152, 166 (1996); *Jenkins v.*

*Anderson,* 447 U.S. 231, 234, n. 1 (1980).  Here, the state did not affirmatively assert procedural default in its answer, and so the defense is waived.  *See* doc. 13.  Accordingly, this court will review petitioner's substantive claims for relief on the merits.

## B.  Substantive Claims

### 1. Illegal Search and Seizure

Petitioner claims that the search warrant for his home was supported by statements that were either knowingly false or showed a reckless disregard for the truth.  Doc. 17, att. 2, p. 17.  He argues that the state court should have afforded him a *Franks* hearing wherein he could present evidence in support of this assertion.  *Id.*  Petitioner further avers that law enforcement officers approached the 12-year-old victim and coerced a statement from her without a parent present.  *Id.* at 17–18.  He maintains that the victim's story to officers was inconsistent and that the officers used only part of the victim's story to obtain a warrant because the officers had "an axe to grind . . . ."  *Id.*

Petitioner presented this same claim for relief in his application for post-conviction review.  R. at 909–11.  The state court denied this claim on the merits, concluding that probable cause existed for both the search warrant and arrest.  R. at 999.

The Supreme Court has made clear that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial."  *Stone v. Powell*, 428 U.S. 465, 494 (1976).  Petitioner has not pled, much less proved, that the state court failed to provide a full and fair opportunity to litigate the probable-cause issue.  Accordingly, petitioner is not entitled to habeas relief on this ground.

### 2. Withholding of Exculpatory Evidence

Petitioner claims that the State failed to disclose a "supplemental report" of Chief Ivory, the officer who conducted an interview with Ms. Miller, the victim's mother.  Doc. 1, att. 2, p. 18.  Petitioner also claims that photographs of the camper were not produced to him.  *Id.*  He argues that the report and photographs and have exculpatory value.  *Id.*

The State has an obligation to disclose evidence in its possession that has exculpatory value to a criminal defendant.  *Brady v. Maryland*, 373 U.S. 83 (1963).  This obligation of disclosure stems from the right to due process as guaranteed by the 14th Amendment.  *Id.* at 86. A *Brady* violation may occur when: (1) undisclosed evidence demonstrates that the prosecution's case included perjured testimony that the prosecution knew or should have known was perjured; (2) the prosecution fails to respond to a request by the defense for specific exculpatory evidence; and (3) the prosecution fails to disclose exculpatory evidence requested in a general manner or not requested at all.  *U.S. v. Augurs*, 427 U.S. 97, 103–107 (1976).

 Petitioner presented an identical argument regarding exculpatory evidence to the state district court.  R. at 911–19.  The court rejected the claim, noting the following:

> As to Claim II, the information contained in Mr. Cloud's exhibit B (Chief Ivory's supplemental report) was provided to Mr. Cloud in discovery.  Ms. D'Lisa Miller was present for the trial.  Mr. Cloud knew she was present.  Ms. Miller could have been called as a witness by Mr. Cloud to present any exculpatory information she might have.  Mr. Cloud chose not to call her as a witness.  Mr. Cloud, in his argument of this claim, also contends that the victim . . . falsely accused him and that he was convicted on the basis of her false testimony.  The victim testified at the trial and was subjected to a vigorous cross examination by Mr. Cloud's attorney.  The defense emphasized that the mother, Ms. Miller, was in the camper within shouting distance when the crimes took place and, also, emphasized the victims inconsistencies in her statements made during the investigation.  Credibility of a witness is within the purview of the jury.  They obviously found the victim to be credible.  Mr. Cloud also argues that he did not receive photographs taken inside the trailer.  However, discovery contains copies of photographs taken in the trailer which were provided to Mr. Cloud.

R. at p. 1000 (emphasis added).  The underlined portions of the court's reasons for judgment make clear that the court made only a factual determination that the pictures and report were disclosed.  The court did not make a determination as to whether petitioner would be entitled to relief if in fact he had not received the report or the pictures.

Because the state court's ruling was exclusively a factual determination, the question on federal habeas review is whether the state court's "adjudication of the claim" was "based on an unreasonable determination of the facts in light of the evidence."  28 U.S.C. § 2254(d)(2).  The factual findings of the state court are presumed to be correct, and petitioner has the burden of rebutting that presumption by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).

Based on the above standard, petitioner is not entitled to relief on his exculpatory evidence claim.  There is no basis for this court to conclude that the state court made an unreasonable factual determination regarding production of the supplemental report and photographs.  Petitioner has not presented any evidence whatsoever that his counsel was not in possession of these items, much less clear and convincing evidence sufficient to rebut the presumption that the state court's findings were correct.  Accordingly, petitioner is not entitled to *habeas* relief in this regard.

### 3. Denial of Compulsory Process

Petitioner claims that the State denied him the right of compulsory process to obtain witnesses at his trial.  Doc. 1, att. 2, pp. 20–24.

On habeas review, the determination of whether a petitioner's Sixth Amendment compulsory process has been violated is a mixed question of law and fact.  *Townzen v. Warden, Rayburn Correctional Ctr.*, 2009 WL 2356146 *3 (W.D. La. 2009) (citing *Gochicoa v. Johnson,* 118 F.3d 440, 445 (5th Cir. 1997); *Beckwith v. Anderson,* 89 F. Supp. 2d 788, 794 (S.D. Miss.

2000)).   Accordingly, the court reviews the issue under 28 U.S.C. § 2254(d)(1) to determine whether "adjudication of the claim . . . resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States . . . ."

The Sixth Amendment preserves the right of a defendant in a criminal trial to have compulsory process for obtaining favorable witnesses. *Washington v. Texas*, 388 U.S. 14, 19 (1967). However, "the right to compulsory process is not unlimited," *United States v. Whittington*, 783 F.2d 1210, 1218–19 (5th Cir. 1986), and the accused must show that the witness's testimony would be both material and favorable to the defense. *United States v. Valenzuela–Bernal*, 458 U.S. 858, 867 (1982).   Furthermore, the right to compulsory process is limited by evidentiary rules, *see, e.g.*, *United States v. Davis*, 772 F.2d 1339, 1347–48 (7th Cir. 1985), and by the state's legitimate interest in efficient trials. *See, e.g.*, *United States v. King*, 762 F.2d 232, 235 (2d Cir. 1985).

Petitioner states that he provided his counsel a list of witnesses to subpoena but that no subpoenas issued. Doc. 1, att. 2, p. 21.   He also made this argument on the first day of trial, in an effort to have his court-appointed counsel "recused."  Doc. 57, pp. 4–5.   In response, petitioner's counsel stated that she attempted to have the subpoenas issued as instructed but that none of the witnesses could be found except one and even that witness would not come to the door. *Id.*  The court noted as follows:

> All Right. She can't go and drag them in, sir. You have provided what you can, and she had tried to subpoena these people. So, the Court will deny your request [to have counsel "recused"].

*Id.*  Petitioner disagrees with the judge's statement, arguing that the very nature of compulsory process is to "drag in" unwilling witnesses. Doc. 21, att. 2, pp. 21–24.   He states that "criminal

trials are not merely social events held for entertainment purposes to which witnesses may or may not appear as they so desire." *Id.* at 22.

Petitioner presented this identical claim in his application for post-conviction relief in state court.  In denying the claim, the court noted as follows:

> As to Claim III, Mr. Cloud stated that he provided a list of witnesses to his counsel.  Only one had an address.  Mr. Cloud does not state what the witnesses would have testified.  The only witness that was in the camper when the offenses occurred, Ms. Miller, was not subpoenaed by Mr. Cloud.  However, she was in court and could have been called to testify on Mr. Cloud's behalf. Again, Mr. Cloud failed to raise this issue in his appeal. As a result of the above, Claim III is denied.

R. at 1000.

In his *habeas* application, Petitioner argues that even though Ms. Miller was present in court, the fact that she was not subpoenaed meant that he could not call her as a witness in his defense.  Doc. 1, att. 2, pp. 23–24.  With regard to the other witnesses, he did not identify them or describe their purported testimony in his post-conviction relief application, but he later did so at the hearing on his claim for ineffective assistance of counsel.  *See* R. at 1000; 1039.

Petitioner is not entitled to relief on this ground.  As noted by the state court, petitioner's counsel attempted to subpoena the listed witnesses.  Doc. 57, pp. 4–5; R. at 1000.  However, service could not be effected because of the lack of service information provided.  The inability to effect service did not amount to a denial of the right as there is no indication that the state court refused to issue proper subpoenas when requested by the defendant.  Furthermore and with respect to Ms. Miller, it is difficult to see how the state denied petitioner the chance to call her as a witness insofar as she was present at the trial.

Moreover, even if petitioner were to show that his Sixth Amendment compulsory-process rights were violated, he would not automatically be entitled to relief.  A *habeas* petitioner must show not only that the right to compulsory process was in fact violated, but also that "there is

'more than a mere reasonable possibility that the error contributed to the verdict.'" *Wilkerson v. Cain,* 233 F.3d 886, 892 (5th Cir. 2000) (quoting *Woods v. Johnson,* 75 F.3d 1017, 1026 (5th Cir. 1996)).   Petitioner has not met that burden here.   His habeas application contains no statement as to how the lack of his witnesses' testimony resulted in a guilty verdict.   Thus, even if petitioner were to prove that the right had been violated, which he has not, then his *habeas* claim would still fail.

Because petitioner has failed to demonstrate that the district court's adjudication of his compulsory-process claim was contrary to clearly established federal law, he is not entitled to habeas relief on this claim. We note that the thrust of plaintiff's compulsory process claim appears to be against his counsel for failing to *investigate* witnesses.   Accordingly, the claim is properly analyzed under the Sixth Amendment right to effective assistance of counsel, which is discussed in the immediately following section.

### 4. Ineffective Assistance of Counsel

Petitioner argues that Ms. Judi Abrusley, his court-appointed counsel at trial, did not provide him effective assistance of counsel as guaranteed by the Sixth Amendment. Doc. 1, att. 2, p. 24–25.   He further claims that Mr. David Deshotel, his lawyer at the post-conviction relief stage, was likewise ineffective.   *Id.* at 25.   This argument runs throughout petitioner's application under petitioner's other claims for relief but we will address it herein in full.

Ineffective assistance of counsel is a mixed question of law and fact. *Triplett v. Johnson*, 158 F.3d 584, 584 (5th Cir. 1998) (citing *Black v. Collins*, 962 F.2d 394, 401 (5th Cir. 1992)). Therefore, because the state court adjudicated this claim on the merits, the standard on *habeas* review is whether the state court's adjudication "resulted in a decision that was contrary to, or

involved an unreasonable determination of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254 (d)(1).

Claims of ineffective assistance of counsel are gauged by the guidelines set forth by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984). Under *Strickland*, a petitioner must demonstrate: (1) that his counsel's performance was deficient, requiring a showing that the errors were so serious such that he failed to function as "counsel" as guaranteed by the Sixth Amendment; and (2) that the deficiency so prejudiced the defendant that it deprived him of a fair trial or of a dependable verdict. *Id.* at 687. This standard does not require perfect assistance by counsel; rather, petitioner must demonstrate that counsel's representation fell beneath an objective standard of reasonableness. *Id.* at 687–88.

Petitioner raised the same claims of ineffective assistance of counsel to the state district court that he raises here. Accordingly, at this stage "[t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable. This is different from asking whether defense counsel's performance fell below *Strickland*'s standard." *Harrington v. Richter*, 131 S.Ct. 770, 785 (2011). Stated differently, when a state court has already heard a *Strickland* claim, this court does not conduct a *de novo* review of the efficacy of petitioner's legal representation. Our review is limited to whether the state court's determination of *Strickland* was unreasonable.

It is clear from the record that on July 21, 2009, the state court conducted a thorough and well-reasoned inquiry into the issue of Ms. Abrusley's representation. R. at 1038–41. The court noted that Ms. Abrusley initially secured a more lenient sentence for petitioner pursuant to a plea deal, and that when petitioner alone decided to appeal that sentence, he was placed in a worse position than before. *Id.* at 1038–39. Next, the court found that the petitioner's potential

witnesses would not have been able to shed any light on what happened in the camper; therefore, the court concluded that Ms. Abrusley's failure to call these witnesses did not rise to the level of a constitutional violation.  *Id.* at 1039.  The court also refused to second-guess Ms. Abrusley's strategic decision not to call the victim's mother, noting that her testimony "could have been good for the defendant but it could, also, have been damaging."  *Id.*  Finally, the court found that the jury was aware of much of the evidence and testimony that petitioner characterizes as exculpatory through his Ms. Abrusley's cross-examination of the victim and other witnesses.  *Id.* at 1039–40.

The court therefore concluded that petitioner failed to satisfy even the first prong of the *Strickland* test, *i.e.* that Ms. Abrusley's performance was deficient.  We find nothing unreasonable in that determination.  Petitioner's problems with Ms. Abrusley were heard and addressed by the state court, which quite appropriately found that her assistance was well within constitutional bounds.

As for petitioner's claim that Mr. Deshotel was also ineffective, that claim is not cognizable on *habeas* review.  There is no Constitutional right to counsel in state or federal collateral proceedings.  *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987).  The right only applies to a "critical stage" of the criminal process, *Iowa v. Tovar*, 541 U.S. 77, 80–81 (2004), which does not include post-conviction hearings or *habeas corpus* proceedings.  28 U.S.C. §2254(i); *see also Finley*, 481 U.S. at 555.

Based on the foregoing, petitioner is not entitled to *habeas* relief on the ground of ineffective assistance of counsel.

### 5. Knowing Use of False Testimony

Petitioner argues that the state knowingly made use of false testimony at his trial.  Doc. 1, att. 2, pp. 27–28.  Specifically, he argues that the victim lied on the stand, and that the state knew her testimony was false yet allowed her to proceed anyway in order to secure a conviction.  *Id.* In denying this claim on postconviction review, the state court noted as follows:

> [C]redibility of a witness is within the purview of the jury. The jury obviously found the victim to be credible.  A defendant can be found guilty based on the testimony of one witness, if believed.

R. at 1000.

Petitioner correctly argues that the state court did not address the pertinent question of whether the prosecutor knowingly elicited perjured testimony.  Doc. 1, att. 2, p .28.  However, the state court's failure to do so does not mean that petitioner is automatically entitled to relief. "The Due Process Clause of the Fourteenth Amendment forbids the State from knowingly using perjured testimony." *Knox v. Johnson*, 224 F.3d 470, 477 (5th Cir. 2000) (citing *Giglio v. United States*, 405 U.S. 150, 153 (1972).  In order to succeed on this claim on *habeas* review, petitioner must show "(1) the evidence was false, (2) the evidence was material, and (3) the prosecution knew that the evidence was false." *Nobles v. Johnson*, 127 F.3d 409, 415 (5th Cir. 1997).

Petitioner is clearly not entitled to relief under this standard.  Although the state district judge did not discuss the false-testimony claim when she summarily denied claim five, the reason the judge did not do so is obvious:  there is simply no indication that the testimony was false.  Even if the testimony was false there is no evidence that the prosecution knew that it was false.  Petitioner has not demonstrated that the state district court's decision is contrary to *Nobles* or misapplied its principles, nor has petitioner shown that the decision was unreasonable in light of the facts on record.  There is no evidence whatsoever in support of this contention beyond petitioner's bare assertion.  As such, it does not provide a ground for relief.

### 6.  Improper Comments by Prosecutor in Closing Arguments

Finally, petitioner claims that the prosecutor improperly vouched for the victim's credibility during closing arguments at trial.  Doc. 1, att. 2, pp. 29–30.  The remarks at issue were made during the state's rebuttal argument by Mr. Joe Green, the assistant district attorney who tried the case.  R. at 643.  In response to the defense's closing argument, which focused primarily on the victim's credibility, Mr. Green stated as follows:

> And I guess we are supposed to assume that this young lady that bravely took the stand is lying. This is the worst lie that has ever happened in the history of the criminal justice system in Allen Parish right here. She sat on this stand and she told nothing but lies. It was - - it is just perjury. That is what we are to believe if we want to follow that line, that road, the defendant wants us to go on, that is where we have to go to find reasonable doubt, that she had to be sitting up there lying. But, how is it that what she said in Evangeline Parish is true? It had to have been true because Tommy Cloud plead guilty for that sex offense on her in Evangeline Parish. But, all of a sudden for some strange reason she wants to lie about what happened in Allen Parish. What is her motive? Young girl who likes to traumatize herself even further, getting up in front of a jury, having to cry about the bad things that happened to her in the past, she just likes this, this is a hobby for her. Preposterous. Absolutely preposterous. She was brave, she was heartfelt, she was very detail oriented, that was no lie.

R. at 646.  Petitioner argues that Mr. Green improperly bolstered the victim's credibility by personally attesting to her truthfulness.  Doc. 1, att. 2, p. 29.  He argues that the statement had a prejudicial effect on the verdict.  *Id.* at 30.

The state court, in its adjudication of this claim on post-conviction review, noted as follows:

> As to Claim VI, the court does not find Mr. Cloud's argument compelling.  The State may rebut the argument made by the defense in its closing.  The defense's argument was that the victim lied on the witness stand.  The remarks made by the State referred to by Mr. Cloud in his argument addressed the defense's argument.

R. at p. 1000.  Because the state court rejected this claim on the merits, the scope of our review is whether the state court determination resulted in an objectively unreasonable application of clearly established Supreme Court precedent.  28 U.S.C. § 2254(d)(1).

Generally, it is improper for a prosecutor to vouch for the credibility of witnesses. *United States v. Young*, 470 U.S. 1, 5 (1985). The Supreme Court has stated that "the prosecutor's opinion carries with it the imprimatur of the government, and may induce the jury to trust the government's judgment rather than its own view of the evidence." *Id.* at 18–19 (citing *Berger v. United States*, 295 U.S. 78, 88–89 (1935).  "A prosecutor may argue fair inferences from the evidence that a witness has no motive to lie, but cannot express a personal opinion on the credibility of witnesses."  *United States v. Gracia*, 522 F.3d 597, 600 (5th Cir. 2008).

In the instant case, the state court's adjudication was certainly reasonable.  Although statements such as "that was no lie" might appear improper if read out of context, one must consider that, when making the statement, Mr. Green was simply responding to the defense's closing statement which repeatedly assailed the victim's truthfulness.  R. at 639–43.  It is therefore clear that the prosecutor was *not* offering a personal assurance of the victim's credibility, but rather rebutting the argument that the witness lied.

Furthermore, even if we were to conclude that the remarks amounted to prosecutorial misconduct, petitioner would not be entitled to habeas relief unless he could show that the remarks "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986).  Petitioner cannot meet this burden considering the context in which the statement was made and the strength of the evidence against him.  In other words, petitioner could not prove that "but for" the improper remarks, he would not have been convicted.  *See Turner v. Johnson*, 106 F.3d 1178, 1188 n. 46 (5th Cir. 1997). *Jones v. Butler*, 864 F.2d 348,356 (5th Cir. 1988).  Accordingly, petitioner is not entitled to *habeas* relief on this ground.

## V. CONCLUSION & RECOMMENDATION

For the reasons discussed herein, IT IS RECOMMENDED that the instant application be DENIED and DISMISSED WITH PREJUDICE.

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties have fourteen (14) days from receipt of this Report and Recommendation to file written objections with the Clerk of Court.  Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days of receipt shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.  *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1429–30 (5th Cir. 1996).

In accordance with Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts, this court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant.  Unless a Circuit Justice or District Judge issues a certificate of appealability, an appeal may not be taken to the court of appeals.  Within 14 days from service of this Report and Recommendation, the parties may file a memorandum setting forth arguments on whether a certificate of appealability should issue.  *See* 28 U.S.C. § 2253(c)(2).  A courtesy copy of the memorandum shall be provided to the District Judge at the time of filing.

THUS DONE this 4th day of February, 2014.

KATHLEEN KAY
UNITED STATES MAGISTRATE JUDGE